# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ELIZABETH SANCHEZ, DAVID GONZALEZ, ADAN SANCHEZ

      Plaintiffs,

v.                                   Case No:   6:21-cv-00337-JA-EJK

LA CANTINA COCINA MEXICANA, INC.

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion to Approve Settlement Agreement (the "Motion") (Doc. 16), filed May 18, 2021. Upon consideration, I respectfully recommend that the Motion be granted.

**I.    BACKGROUND**

In June 2019, Plaintiffs, Elizabeth Sanchez, David Gonzalez, and Adan Sanchez ("Plaintiffs"), initiated this action against Defendant, La Cantina Cocina Mexicana, Inc. pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219. (Doc. 1.) Plaintiffs allege that, from early to mid-2019 to July 2020, they worked for Defendant as either a server or bartender. (Doc. 1 ¶¶ 40–42.) Plaintiffs also allege that during the course of their employment, they routinely worked in excess of forty hours a week, but their employer failed to pay them the required minimum and

overtime wages as required by the FLSA and Florida law. (*Id.* ¶¶ 29–31, 40–42.) Defendant denies liability for Plaintiffs' claims. (Doc. 16 at 5.) However, Plaintiffs and Defendant have negotiated a compromise and settlement of Plaintiffs' claims and filed a motion for approval of their settlement agreements (collectively, the "FLSA Settlement Agreements"),[1] pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 16-1, Exs. A, B, C.)

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged

---

[1] Plaintiffs each also filed a separate "Settlement Agreement and Mutual General Release," which will be addressed *infra*.

by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute;

>    we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

### III. DISCUSSION

#### A. FLSA Settlement Agreement

##### 1. Settlement Sum

According to the Motion, Defendants have agreed to pay Elizabeth Sanchez $15,878.05, David Gonzalez $16,878.05, and Adan Sanchez $12,053.91 for their minimum wage and unpaid overtime wage claims. (Doc. 16 at 6.) Defendant will also pay Elizabeth Sanchez $15,878.04, David Gonzalez $16,878.04, and Adan Sanchez $12,053.91 in liquidated damages. (*Id.*) In response to the Court's Interrogatories (Doc. 20), Elizabeth Sanchez indicated that she originally sought between $10,344.88 and $15,877.52 in unpaid wages, David Gonzalez originally sought between $11,344.88 and $16,877.52 in unpaid wages, and finally Adan Sanchez originally sought between $7,845.60 and $12,037.36 in unpaid wages. (Docs. 20-1–3.) Because none of the Plaintiffs will receive less than the amount to which they claimed they were entitled under the FLSA, they have not compromised their claims within the meaning of *Lynn's Food,* 679 F.2d at 1354–55; thus, there is no need for further review.

##### 2. Attorney's Fees

Plaintiffs' attorney will receive $3,460.00 for fees and costs in connection with the representation of Elizabeth Sanchez, $3,460.00 for fees and costs in connection with the representation of David Gonzalez, and $3,460.00 for fees and costs in connection with the representation of Adan Sanchez. (Doc. 16 at 6.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable

attorney's fee to be paid by the defendant, and costs of the action." As the parties represent that this amount was negotiated separately from the amount received by Plaintiffs, and the settlement is otherwise reasonable on its face, further review is not required. (Doc. 32 at 8); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### 3. Release of FLSA Claims

Plaintiffs agree to release all of their claims under the FLSA, including claims for overtime, minimum wages, liquidated damages, and attorneys' fees and costs (the "FLSA Release"). (Doc. 16-1, Ex. A ¶ 2; Ex. B ¶ 2, Ex. C ¶ 2.) Because the FLSA Release releases only Plaintiffs' FLSA claims against Defendant and does not seek to release other non-FLSA related claims, I recommend that the Court find this release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

Based on the foregoing, I respectfully recommend that the Court find that the FLSA Settlement Agreements are a fair and reasonable resolution of a bona fide dispute and that the Court approve them as such.

### B. Settlement Agreement and Mutual General Releases

Plaintiffs also each submitted a separately executed Settlement Agreement and Mutual General Release ("Separate Agreement") for the Court's review. These Separate Agreements contain general releases wherein Plaintiffs release any and all

known or unknown claims against Defendant, as well as a variety of other provisions not contained in the FLSA Settlement Agreements, in exchange for separate consideration for each Plaintiff. (Separate Agreements, Doc. 16-1.)

        1.      Release

The Separate Agreements contain a general release in which the parties mutually agree to release any and all known or unknown claims they may have against each other (the "Release"). (Doc. 16-1, Ex. A ¶ 2, Ex. B ¶ 2, Ex. C ¶ 2.) General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

In this case, however, the parties negotiated the general release separately from the FLSA claims, resulting in an agreement to provide Plaintiffs with additional consideration of $2,500 for the general release and other terms. (Separate Agreements, Doc. 16-1, Ex. A ¶ 3, Ex. B ¶ 3, Ex. C ¶ 3.) "A general release is generally disfavored in the context of a FLSA settlement, because it is viewed as affecting the fairness and reasonableness of the settlement…[h]owever, courts will approve an FLSA settlement that contains a general release where the plaintiff is paid separate consideration for the provision." *Bravo v. Ross Dress for Less Inc.*, No. 618CV2210ORL28LRH, 2019 WL 3387003, at *4 (M.D. Fla. May 23, 2019), report and recommendation adopted, No. 618CV2210ORL28LRH, 2019 WL 3383536 (M.D. Fla. May 28, 2019); *see also*

*Wilburn v. Paradise Lawns & Landscaping, Inc., 6:14-cv-1557-Orl-37TBS*, Doc. 18 at *6 (approving FLSA settlement where plaintiff compromised their FLSA claim and received $250 in separate consideration for general release where it was negotiated separately from plaintiff's FLSA claim); *Burch v. TTC Performance Prods., Inc.*, 6:20-cv-537-Orl-40EJK, Doc. 19 at *6–7 (M.D. Fla. Feb. 8, 2021), *report and recommendation adopted*, Doc. 20 (M.D. Fla. Mar. 9, 2021) (approving FLSA settlement where plaintiff received full value for their FLSA claim, plus $100 in separate consideration for general release where it was negotiated separately from plaintiff's FLSA claim).

Since $2,500 is more than a *de minimis* amount, I find that there is adequate consideration for the general release that is separate from that being given in exchange for the settlement of the FLSA claims. Therefore, I recommend that the Court find that the general release provision does not preclude approval of the Settlement Agreements.

### 2. Non-Disparagement Provision

The Separate Agreements contain a mutual non-disparagement clause in which the parties have made a reciprocal agreement not to disparage one another. (Doc. 16-1, Ex. A ¶ 6; Ex. B ¶ 6, Ex. C ¶ 6.)[3] They provide, in pertinent part:

> [Plaintiffs agree that they] will not (a) talk about or otherwise communicate to any third party in a malicious, disparaging, or defamatory manner regarding Juan Zarinana, Adriana Valdes Echeverria, and/or their children, La Cantina and/or the current and former officers, managers, managing members, directors, owners

---

[3] This reference to paragraph 6 refers to the second paragraph in the Separate Agreements numbered as such. It appears the documents contain numbering errors.

> and agents of La Cantina; or (b) make or authorize to be made by any written or oral statement (verbal, written, electronic, social media postings, or other format) that may disparage the reputation of Juan Zarinana, Adriana Valdes Echeverria, and/or their children, La Cantina, and/or the current and former officers, managing members, directors, owners and agents. Juan Zarinana agrees that he will not (a) talk about or otherwise communicate to any third party in a malicious, disparaging, or defamatory manner regarding [Plaintiffs]; or (b) make or authorize to be made by any written or oral statement that may disparage the reputation of [Plaintiffs]. Juan Zarinana also agrees to instruct Adriana Valdes Echeverria, and their children not (a) talk about or otherwise communicate to any third party in a malicious, disparaging, or defamatory manner regarding [Plaintiffs]; or (b) make or authorize to be made by any written or oral statement that may disparage the reputation of [Plaintiffs].

("Non-Disparagement Provisions") (*Id.*)

Courts in this District have generally rejected non-disparagement provisions in FLSA settlement agreements, finding them to "thwart Congress's intent to ensure widespread compliance with the FLSA." *See Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15–cv–710–Orl–22GJK, 2016 WL 1376358, at *3 (M.D. Fla. Mar. 28, 2016) (internal quotation marks omitted), *report and recommendation adopted*, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016); *see also Holley v. Sebek Kirkman LLC*, Case No. 6:15-cv-1626-ORl-40GJK, 2016 WL 3247589, at *5 (M.D. Fla. May 26, 2016), *report & recommendation adopted*, 2016 WL 3231232 (M.D. Fla June 13, 2016). "However, Courts have upheld non-disparagement clauses that benefit employers where there has been a reciprocal agreement to provide a neutral reference, which inures to the benefit of the plaintiff." *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL

5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report & recommendation adopted*, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016); *see also Clarke v. Alta Resources Corp.*, Case No. 2:17-cv-276-FtM-99CM, 2017 WL 4958771, at *3–4 (M.D. Fla. Oct. 30, 2017), *report & recommendation adopted*, 2016 WL 4958770 (M.D. Fla. Nov. 1, 2017) (approving of a non-disparagement provision where, in exchange, plaintiff received additional consideration, a neutral employment reference, and a mutual release of claims).

Here, Plaintiffs are receiving the benefit of a neutral reference in exchange for the non-disparagement provision. (Doc. 16-1, Ex. A ¶ 7, Ex. B ¶ 7, Ex. C ¶ 7.)[4] Additionally, the non-disparagement provisions are mutually beneficial to the parties. For these reasons, and because courts have previously approved of a similar non-disparagement provision, *see e.g.*, *Bell*, 2016 WL 5339706, at *3, I recommend that the Court find that the provision does not preclude approval of the Settlement Agreements in this instance.

### 3. No-Rehire Provision

The Separate Agreements contain no-rehire provisions. (Doc. 16-1, Ex. A ¶ 6; Ex. B ¶ 6, Ex. C ¶ 6.) This type of restrictive provision is generally disfavored by courts because it is viewed as punishing the plaintiff for exercising his or her rights under the FLSA. *See, e.g.*, *Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-40PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017) (citing *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13–CV–

---

[4] This reference to paragraph 7 refers to the first paragraph in the Separate Agreements numbered as such. It appears the documents contain numbering errors.

- 10 -

88 (WLS), 2013 WL 5933991, at *6 (M.D. Ga. Nov. 1, 2013)), *report and recommendation adopted,* 2017 WL 2172089 (M.D. Fla. May 17, 2017).

Here, the parties explain that the relationship between them was antagonistic, both before and during this case. (Doc. 16 at 7.) As such, the parties inform the Court that "the mutual release and mutual non-disparagement provisions were of particular importance to the Defendant and the Plaintiffs for reasons unrelated to the FLSA claims." While the parties do not specifically mention in their Motion that the no-rehire provision was also important to the overall agreement, it seems reasonable to conclude that due to the parties' antagonistic feelings toward each other, it was.

As mentioned *supra*, Plaintiffs are each agreeing to the mutual release for separate consideration. No portion of this separate consideration is specifically allocated to the no-rehire provision. *Cf. Caamal v. Shelter Mortg. Co., L.L.C.*, Case No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (approving no-rehire provision where the agreement specifically provided that additional, separate consideration had been paid for that specific provision and other releases); *Cruz v. Winter Garden Realty, LLC*, No. 6:12-cv-1098-Orl-22KRS, 2013 WL 4774617, at *3 (M.D. Fla. Sept. 4, 2013) (finding the settlement agreement fair despite waiver of right to future employment, in part, because the plaintiff stated that she did not desire reemployment). However, given the explanation in the Motion of the parties' relationship towards one another, the undersigned is adequately convinced that the no-hire provision was sufficiently related to the general release of claims

Plaintiffs accepted for separate consideration, and for that reason, I will recommend that the no-rehire provision not preclude the approval of the Settlement Agreements.

### 4. Confidentiality Provision

Finally, the Separate Agreements contain confidentiality provisions. (Doc. 16-1, Ex. A ¶ 4; Ex. B ¶ 4, Ex. C ¶ 4.) However, since the Settlement Agreements and Separate Agreements have been filed on the public docket, the undersigned recommends that they not preclude approval of the Settlement Agreements.

## IV. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice (Doc. 16) and **APPROVE** the FLSA Settlement Agreements (Doc. 16-1, Exs. A, B, C);

2. **DISMISS WITH PREJUDICE** Plaintiffs' Complaint (Doc. 1); and

3. **DIRECT** the Clerk of Court to close the case.

### NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties do not object to this Report and**

**Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on September 3, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE